Filed 3/19/21  P. v. Dean CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073669 |
| v. | (Super. Ct. No. FSB060072) |
| JAMES CLEO DEAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene Sevidal, Lynne McGinnis and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A jury convicted defendant and appellant, James Cleo Dean, of one count of felony murder (Pen. Code, § 187, subd. (a); count 7)[1] and one count of robbery (§ 211; count 9). The jury also found true the special circumstance allegation that the murder was committed during the course of the robbery (§ 190.2, subd. (a)(17)). The trial court sentenced defendant to life without the possibility of parole for the murder conviction and a term of six years for the robbery conviction, which the trial court stayed. In 2012, this court affirmed the judgment. (*People v. Porter* (Mar. 19, 2012, E050961) [nonpub. opn.].)

In 2019, Dean filed a petition to vacate his murder conviction and for resentencing under section 1170.95, the resentencing provision of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015). The trial court denied the petition on the grounds that Senate Bill No. 1437 is unconstitutional and, in any event, Dean was not entitled to have his conviction vacated because he was a major participant in the felony-murder and acted with reckless indifference to human life during its commission. Dean appeals, and we affirm.[2]

---

[1]  Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]  Dean filed a petition for habeas corpus, case No. E074554, which we ordered considered with this appeal. We will rule on the petition by separate order.

II.

FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant Porter was acquainted with defendant Dean and Dean's stepbrother, David Weed. Weed and Dean would spend time at Porter's residence, where they sometimes smoked marijuana and played video games with Porter's stepson, A. Dean knew about but claimed he did not participate in the robberies perpetrated by others (e.g., Porter, Weed, Dorian Goodman), but he was sometimes at Porter's residence when the robbers returned; Porter would occasionally give Dean money or buy him alcohol or drugs.

On or about December 24, 2006, Dean was at Porter's residence with Porter and Goodman. Dean asked Porter to take him to meet the victim, Shawn Nix, who was a drug dealer that Dean knew. Dean had a little money and he wanted to buy drugs. Porter had agreed to take Dean to Nix's apartment, but first he and Goodman went upstairs for a while. By the time they came back downstairs, Weed had arrived. Dean had telephoned Nix at some point that evening to say that he would come over to Nix's house if he could get a ride.

The four men, defendant Dean, Weed, defendant Porter and Goodman, set out for Nix's apartment in Ontario in Weed's car. Porter brought his handgun with him. There was also a tire wrench on the floor in the backseat of the car.

---

[3] The facts of defendant's offenses are drawn from our opinion in *People v. Porter* (Mar. 19, 2012, E050961) [nonpub. opn.].

3

Dean told Porter that he knew Nix had lots of drugs and money and things at the apartment that they could steal. Dean had floated the idea of robbing Nix before, and Porter had rejected the idea, but this time they agreed to do so. When they arrived at Nix's apartment building and parked the car, Dean and his stepbrother Weed went to the door first, while Porter and Dorian Goodman waited in the car. The plan was for Dean and Weed to gain entry, because Nix was cautious and would not open the door for strangers. Once Dean and Weed were inside, they planned to knock out Nix so that Porter and Goodman could come in and steal items from the apartment. Weed took the tire wrench with him, concealed in his coat, to carry out this plan. Dean told police that he did not know that Porter or the others intended to rob or kill Nix; for his own part, he only went to Nix's apartment to buy drugs.

About five minutes after Dean and Weed went into the apartment, Porter and Goodman entered. Nix was standing with his hands up, and he was bleeding from the head. Weed held the tire wrench up and commanded Nix to get on the floor. Porter punched Nix in the face to gain compliance; Nix then lay face down on the floor. While Nix was on the floor, Porter stood over him with the gun. The others ransacked the apartment, grabbing whatever they could. Then Porter had Dean hold the gun on Nix while Porter rummaged through the apartment. Goodman took the items they stole and put them into the car. As he came back into the apartment, Porter ordered Dean and Goodman to return to the car. Goodman wanted to see what was going on, however, so he looked back as he was being ushered outside. He saw Porter shoot Nix. Porter then

4

handed the gun to Weed and Weed fired a second shot. Dean tried to grab Goodman to take him outside, but he did not leave. After Nix had been shot, all four men walked out. They returned to Porter's apartment where they sorted through the items taken from Nix.

III.

DISCUSSION

Dean argues his felony-murder conviction should be vacated under recently enacted section 1170.95 because he was not a major participant in the underlying robbery and did not act with reckless indifference to human life while committing the offense. We conclude the jury's true finding on the robbery-murder special circumstance precludes Dean from relief under section 1170.95.

A. *Senate Bill No. 1437*

Senate Bill No. 1437, which took effect on January 1, 2019, "limit[ed] accomplice liability under the natural and probable consequences doctrine and the felony-murder rule." (*People v. Cruz* (2020) 46 Cal.App.5th 740, 755; *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246 (*Lamoureux*).) Before Senate Bill No. 1437's enactment, under the felony murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*Lamoureux*, *supra*, at pp. 247-248; *People v. Chun* (2009) 45 Cal.4th 1172, 1182.) "'The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the

5

perpetration of a felony inherently dangerous to human life.'" (*People v. Chun*, *supra*, at p. 1184; *Lamoureux*, *supra*, at p. 248.)

Similarly, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 248; *People v. Chiu* (2014) 59 Cal.4th 155, 161-162.) "'Because the nontarget offense [was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.'" (*People v. Flores* (2016) 2 Cal.App.5th 855, 867.)

Senate Bill No. 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

"Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the 'person was the actual killer'; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the 'person was a major participant in the underl[y]ing felony and acted with reckless

6

indifference to human life.'" (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57, review granted Mar. 18, 2020, S260410.)[4]

Before ruling on the merits of Dean's section 1170.95 petition, the trial court found that Senate Bill No. 1437 is unconstitutional. On appeal, however, the People concede that it is constitutional. Several courts, including this one, have held that Senate Bill No. 1437 is constitutional. (E.g., *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 275, 286; *People v. Solis* (2020) 46 Cal.App.5th 762, 769, 779-780; *People v. Cruz, supra*, 46 Cal.App.5th at p. 747; *People v. Bucio* (2020) 48 Cal.App.5th 300, 306-307, 310-314; *People v. Smith* (2020) 49 Cal.App.5th 85, 91-92; *People v. Prado* (2020) 49 Cal.App.5th 480, 483, 491-492; *People v. Johns* (2020) 50 Cal.App.5th 46, 54-55; *People v. Lippert* (2020) 53 Cal.App.5th 304.)

Following these cases, we agree with the parties that Senate Bill No. 1437 is constitutional. We therefore conclude the trial court incorrectly found that Senate Bill No. 1437 is unconstitutional. The error was harmless, however, because the trial court correctly denied defendant's section 1170.95 petition.

B. *Dean's Section 1170.95 Petition*

The jury found true the special circumstance allegation that Nix was murdered while Dean was "engaged in the commission of the crime of robbery . . . within the meaning of [section] 190.2(a)(17)." For the reasons explained in our recent opinion in

---

[4] We may rely on cases pending before the Supreme Court as persuasive authority while review is pending. (Cal. Rules of Court, rule 8.1115(e)(1).)

7

*People v. Jones* (2020) 56 Cal.App.5th 474 (*Jones*), review granted Jan. 27, 2021, S265854, this finding renders Dean "ineligible for relief under section 1170.95 as a matter of law." (*Id.* at p. 481.)

In *Jones*, as in this case, the jury convicted the defendant of first degree felony murder and also found true a robbery-murder special circumstance allegation. (*Jones*, *supra*, 56 Cal.App.5th at p. 479.) We held "[the] special circumstance finding renders him ineligible for relief under section 1170.95 as a matter of law and the trial court properly denied his petition without an evidentiary hearing." (*Id.* at p. 485.) This was because the jury's true finding on the robbery-murder special circumstances reflected that the jury found the defendant in *Jones* "to have been a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.* at pp. 482-483.)

*Jones* is indistinguishable and thus controls here. As in *Jones*, the jury's true finding on the robbery-murder special circumstances precludes Dean from relief under section 1170.95. (*Jones*, *supra*, 56 Cal.App.5th at p. 483.) We therefore conclude the trial court properly denied Dean's section 1170.95 petition.

As a result, we conclude Dean's trial counsel was not ineffective for failing to file a reply to the petition or for making deficient arguments at the hearing on the petition. Given our conclusion that Dean was not entitled to relief under section 1170.95 as a matter of law, it is not reasonably probable that he would have received a more favorable outcome had his counsel filed a reply or argued differently at the hearing. (See *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218 [ineffective assistance of counsel claim requires

8

the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"].)

IV.

DISPOSITION

The trial court's order denying Dean's section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.